**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CLARE HEALY, Individually and | ) | |
| as Parent and Next Friend of | ) | |
| RODNEY HEALY, Her Minor Child, | ) | |
| 1 Westgate Drive, #2 | ) | |
| Dover, NH 03820, | ) | Civil Action No.: 05-CV-1979(RMC) |
| | ) | |
| | ) | ECF |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.    Introduction.**

The narrow issue in this case is whether FBI Special Agent Hugh S. Williamson was

acting within the scope of his employment when his car collided with Ms. Clare Healy's car

while he was driving to work.

Ms. Healy initially filed this lawsuit in the District of Columbia Superior Court alleging

that S.A. Williamson negligently operated his vehicle and thus caused the accident.  Defendant

substituted the United States Government as the proper defendant in this case and removed it to

this Court.  See Notice of Removal (Dkt. No. 1).  Defendant then moved to dismiss for lack of

subject matter jurisdiction because Ms. Healy failed to exhaust administrative remedies under

the Federal Torts Claim Act ("FTCA").  See Motion at 4-6 (Dkt. No. 4).

Ms. Healy opposes Defendant's Motion by arguing that S.A. Williamson was merely

driving to work and was not acting within the scope of employment at the time of the accident.

See Opp. at 5-7.[1]  Ms. Healy then contends that she needs discovery to show that S.A.

Williamson was not acting in the scope of his employment.  Id.  As a preliminary issue,  Ms.

Healy does not retort and, therefore, concedes that she failed to exhaust administrative remedies

under the FTCA.

In any event, Defendant does not dispute that S.A. Williamson was on his way to work

when the accident occurred.  Given that the parties do not dispute this fact, the narrow legal

question for the Court is whether S.A. Williamson was acting within the scope of his

employment when he was driving to work.  As shown below, S.A. Williamson was acting within

the scope of his employment because he was authorized by his employer – the FBI – to use a

government vehicle to drive to and from work under the FBI's  home-to-work transportation

policy.

## II.     Argument

### A.      Judicial Review of Scope of Employment Certifications.

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly

known as the Westfall Act, 28 U.S.C. § 2679(d), provides that federal employees are immune

from tort liability where the employee "was acting within the scope of his office or employment

at the time of the incident out of which the claim arose...."  Id. § 2679(d)(1).[2]   When a federal

---

[1]      Ms. Healy's Opposition brief is not numbered.  Therefore, Defendant will rely on the pagination provided by ECF.

[2] The Westfall Act was enacted in response to the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292, 299 (1988), which held that immunity from state tort liability required both 1) that the employee was acting within the scope of his employment and 2) that the action was discretionary in nature.  The Westfall Act eliminated the latter requirement.  See Haddon v.

employee is sued for a wrongful or negligent act, the United States Attorney General, or by

designation the United States Attorney in the district where the claim is brought (or his

designee), may certify that the employee was acting at the time within the scope of his or her

employment. See  28 U.S.C. § 2679(d)(1).

Where the Attorney General's designee has filed a certification that the original defendant

was acting within the scope of his employment, such certification has the following two effects:

(1) it requires the substitution of the United States for the federal employee as the defendant in

the lawsuit; and (2) it converts the lawsuit into an action against the United States under the

FTCA.  See Haddonv. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Vanover v. Hantman,

77 F. Supp.2d 91, 97 (D.D.C. 1999), aff'd, 38 Fed. Appx. 4 (D.C. Cir. 2002).

The Supreme Court has held that the government's scope of employment determination

under the Westfall Act is judicially reviewable regarding the substitution of the government.  See

Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995); Stokes v. Cross, 327 F.3d 1210, 1213

(D.C. Cir. 2003); Haddon, 68 F.3d at 1423.  This Court reviews the question of whether the

challenged conduct was within the scope of the individual defendant's employment under a de

novo standard.  See Gutierrez, 515 U.S. at 421-25; Palmer v. Flaggman, 93 F.3d 196, 198-99 (5th

Cir. 1996).

**B.      Discovery is Not Needed Because the Material Facts Are Not in Dispute**.

Ms. Healy argues that she has not had an opportunity to conduct discovery to ascertain

that S.A. Williamson was not acting within the scope of employment when the accident took

place.  Opp. at 6-7.  Ms. Healy claims that S.A. Williamson was simply driving to his job and

---

United States, 68 F.3d 1420, 1422 (D.C. Cir. 1995).

thus was not doing anything within the scope of this employment.  Opp. at 6.

Indeed, if there is a material fact in dispute regarding the scope of employment, the

district court is required to allow for discovery and resolve such a dispute at an evidentiary

hearing using applicable law.  See Stokes, 327 F.3d at 1213-14 (internal citation omitted).

However, the D.C. Circuit has indicated that "not every complaint will warrant further inquiry."

Id. at 1216, and held that a plaintiff challenging a scope-of-employment certification carries the

burden of presenting specific facts to rebut the certification.  Id. at 1214 (citing Lawson v.

United States, 103 F.3d 59, 60 (8th Cir. 1996)).  More particularly, a plaintiff is "required to

plead sufficient facts that, if true, would rebut certification."  Id. at 1216.  A district court may

dismiss a claim without a hearing if the plaintiff fails to set forth any facts, that if true, would

prove the defendant was acting outside the scope of his employment.  Id.

Here, in support of her assertion that S.A. Williamson was not acting within the scope of

his employment, Ms.  Healy submitted her own affidavit.  In it, she states that,

> During the exchange of information, Mr. Williamson never stated that he was
> working at the time of the accident.  He was dressed and appeared as though he
> was on his way to the office to start his work day.  In addition, the time of the
> accident, approximately 8:15am, led me to believe that he was on his way to
> work.  At no time did he say he was on duty or that he was doing any work-
> related activities of any kind.

Plaintiffs' Affidavit in Support of Plaintiffs' Response to Defendant's Motion to Dismiss at ¶ 4.

Defendant does not dispute that S.A. Williamson was on his way to work when the collision

occurred.  Given that the parties do not dispute this fact, there is no need for discovery or any

other evidentiary hearing on the issue.  See Konarski v. Brown, 293 F. Supp.2d 70, 72 (D.D.C.

2003) (citing Koch v. United States, 209 F. Supp.2d 89, 92 (D.D.C. 2002)) (citation omitted)

(explaining that both the discovery process and an evidentiary hearing are only necessary if the

court concludes that there is a "genuine dispute of fact material to the scope-of-employment

issue").

Accordingly, the narrow legal question for the Court to decide is whether S.A.

Williamson's driving to work was within the scope of his employment.  As shown below, under

the District of Columbia law, S.A. Williamson was acting within the scope of his employment.

### C.     S.A. Williamson Was Acting Within the Scope of His Employment Under D.C. Law.

Whether a federal employee's actions are within his scope of employment is a matter that

is based upon the respondeat superior law in the state in which the alleged tort occurred.  See 28

U.S.C. § 1346(b); Haddon, 68 F.3d at 1423 (citing Kimbro v. Velten, 30 F.3d 1501,1506 (D.C.

Cir. 1994)); Aversa v. United States, 99 F.3d 200, 1208 (1st Cir. 1996) (citing H.R. Rep. No.

100-700).   District of Columbia law looks to the Restatement (Second) of Agency (1957) with

respect to scope of employment.  Haddon, 68 F.3d at 1423-24 (citing Moseley v. Second New St.

Paul Baptist Church, 534 A.2d 346, 348 n.4 (D.C. 1987)).

Under the Restatement, the definition of scope of employment is as follows:

[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of
the kind he is employed to perform; (b) it occurs substantially within the
authorized time and space limits; (c) it is actuated, at least in part, by a purpose to
serve the master; and (d) if force is intentionally used by the servant against
another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1).  See also Haddon, 68 F.3d at 1423-24;  Majano v.

Kim, 2005 WL 839546, at * 5 (D.D.C. Apr. 11, 2005) (Collyer, J.), appeal docketed, No. 05-

5200 (D.C. Cir. May 31, 2005).  Conduct must be "of the same general nature as that authorized"

or "incidental to the conduct authorized" to be within the scope of employment.  Id. § 229.  For

conduct to be "incidental" it must be foreseeable, meaning that it is a "direct outgrowth" of the performance of an employee's instructions or job assignment. See Schneider v. Kissenger, 310 F. Supp.2d 251, 265 (D.D.C. 2004) (citing Haddon, 68 F.3d at 1424).

The District of Columbia's formulation of this test "excludes from the scope of employment all actions committed 'solely for [the servant's] own purposes.'" Weinberg v. Johnson, 518 A.2d 985, 990 (D.C.1986) (footnote omitted). Formulated a different way, the question is whether the servant's conduct was "'either wholly or partially in furtherance of the [master's] business'" or "was done 'solely for the accomplishment of the independent malicious or mischievous purpose of the servant.'" Weinberg, 518 A.2d at 989 n.9 (quoting Boykin v. District of Columbia, 484 A.2d 560, 562 (D.C. 1984)) (quoting Penn Central Transportation Co. v. Reddick, 398 A.2d 27, 32 (D.C. 1979)). Importantly, the District of Columbia takes a very expansive view of what conduct may be deemed to be within the scope of employment. See Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976); see also Brown v. Argenbright Security, 782 A.2d 752, 758 (D.C. 2001) (noting that even a sexual assault may "be 'actuated, at least in part, by a desire to serve [the employer's] interest.'") (quoting Weinberg, 518 A.2d at 988) (emphasis in original).

### (1)    Driving to Work was Part of S.A. Williamson's Job

The first prong of the scope of employment test requires that the act was the kind that the employee was employed to do. See Restatement (Second) Agency § 228. The act must have either been "'of the same general nature as that authorized' or 'incidental to the conduct authorized.'" Majano, 2005 WL 839546, at * 5 (Collyer, J.); see also District of Columbia v. Davis, 386 A.2d 1195 (D.C. 1978).

In <u>Davis</u>, plaintiff sued both the police officer and the District of Columbia for

negligence when the officer's gun accidentally discharged while the officer was "unholstering" it

and injured plaintiff. <u>Id</u>. at 1198-99. The District of Columbia argued that it was not liable

because the officer was not acting within the scope of his employment when he brought his gun

to a private apartment, where it was discharged and injured plaintiff. <u>Id</u>. at 1201. The D.C.

Court of Appeals disagreed.

In finding that the officer was acting within the scope of his employment, the D.C. Court

of Appeals found that the employer's (District of Columbia) regulations required the officer to

carry a weapon at all times. <u>Id</u>. at 1203. The court also found that "[b]y wearing [the gun] at all

times, [the officer] was furthering an employer's function of maintaining public order." <u>Id</u>. The

court then concluded that "[t]he weapon was necessary to carry out the mandate of his employer

that he be in a constant state of readiness to take official action." <u>Id</u>. The court then elaborated

that "the act of unhostering [the gun] was surely conduct incidental to that authorized." <u>Id</u>. 1203.

Like the employer in <u>Davis</u>, the FBI has a "Home-to-Work Transportation Plan" that

allows specific FBI agents to use "government vehicles by FBI personnel on a routine basis for

home-to-work transportation." Manual of Administrative Operations and Procedures ("MAOP")

at § 1-3.1.1 (Gov. Exh. A). The policy behind the Plan is to ensure that the FBI has an "adequate

capacity to respond to emergency and other investigative demands." <u>Id</u>.

At the time of the accident (June 2002), S.A. Williamson was "a member of the

Counterintelligence squad and the Hazardous Materials Response Team and frequently had to

support other squads in response to terrorism or criminal investigations or to respond to weapons

of mass destruction (WMD) threats in the Baltimore Division." Williams Decl. at ¶ 2. Given

S.A. Williamson's responsibilities, the FBI's Baltimore Field Office designated him as one of the "expressly authorized employees" who could use a government vehicle for home-to-work transportation. Memorandum on Home-to-Work Transportation Plan, Baltimore Field Office Policy ("Memorandum") at p.3 (Gov. Exh. B). The Memorandum specifically states, "It has been determined that the responsibilities and operational needs of [S.A. Williamson] continue to require the home-to-work use of [a government] vehicle." Id. at 1. See also Williamson Decl. at ¶ 2. Under these facts, S.A. Williamson's driving to work in a government vehicle was "incidental" to his primary duty as "a member of the Counterintelligence squad and the Hazardous Materials Responses Team." Accordingly, the first prong is met.[3]

(2)     **The Accident Occurred Within Authorized Time and Space Limits.**

The second prong of the scope of employment test requires that the act occurs substantially within the authorized time and space limits. See Restatement (Second) Agency §

---

[3]     On the morning of the accident, S.A. Williamson gave another FBI agent, Mr. Tim Clemente, a ride to Mr. Clemente's office in Washington, D.C., before heading to his (Williamson) own office in Calverton, Maryland. Williamson Decl. at ¶¶ 3-4. Under the FBI's policy, S.A. Williamson was authorized to do so. Specifically, according to Section 1-3.1(2) of the MAOPP "an employee may, when circumstances warrant such an action, interrupt his/her travel as long as he/she does not deviate from an expeditious route to his/her residence nor impair his/her ability to retain emergency response." Gov. Exh. C. Section 103.1(3) of the MAOPP further states that "FBI employees are authorized to accompany the driver of the Bureau automobile to and from the driver's residence and the place of work provided that the trip is justifiable as necessary for the Bureau to retain its emergency response capabilities and not significant deviation from the most direct route occurs." Section 1-3.1(3) of MAOPP (Gov. Exh. C).
    Here, consistent with Section 1-3.l(3), S.A. Williamson drove S.A. Clemente to his (Clemente's) office before driving to his own office in Calverton, Maryland. After dropping S.A. Clemente off, S.A. Williamson took the most "expeditious route" to his Calverton Office. Williamson Decl. at ¶ 4. S.A. Williamson's giving S.A. Clemente a ride was an incidental act (authorized under FBI policy) and did not impair his ability to retain emergency response capability. See Majano, 2005 WL 839546, at * 5 (noting that the act must be incidental to the conduct authorized).

228. Here, according to Ms. Healy, the car collision occurred at approximately 8:15 a.m. while

S.A. Williamson was driving to work. Plaintiff's Decl. at ¶ 4. This is not a disputed fact.

The FBI expressly authorized S.A. Williamson's use of a government vehicle to drive to

and from work. Id. at ¶ 2. On the morning of the accident, S.A. Williamson was indeed driving

to work. Williamson Decl. at ¶4. Accordingly, the second prong is easily satisfied in this case.

### (3)     S.A. Williamson's Driving to Work Served the FBI's Purpose.[4]

The third prong of the scope of employment test requires that the conduct be "actuated, at

least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228. In

Majano, the court explained that "[f]or an employer to be held vicariously liable for act

committed by an employee, the act must have been motivated, at least in part, by a purpose to

serve the master." See Majano, 2005 WL 839546, at *7; see also Davis, 386 A.2d at 1203

(noting that an officer carrying "his weapon at all times was carrying out the mandate of his

employer that he be in a constant state of readiness to take official action.").

Here, as a member of the Counterintelligence squad and the Hazardous Materials

Response Team, S.A. Williamson must "respond immediately" to emergency situations.

Williamson Decl. at ¶ 2. Past incidents that required his immediate response included September

11, 2001; a WMD incident at the Southern Avenue Metro in Temple Hill, Maryland; and an

anthrax incident at the Department of Justice mail facility. Williamson Decl. at ¶ 2. Given S.A.

Williamson's duties, the FBI provided S.A. Williamson with a government vehicle for home-to-

work use to ensure that the FBI has "adequate capacity to respond to emergency and other

---

[4]     Since the use of force is not an issue in this case the fourth prong of the scope of
employment test is not addressed here.

investigative demands." Section 1-3.1.1 (Gov. Exh. A). Accordingly, S.A. Williamson's use of

a government vehicle for driving to work was in part to serve the FBI's purpose – namely, to

ensure that FBI has "adequate capacity" to respond to emergency situations.

Ms. Healy, however, argues that the District of Columbia's "coming and going rule"

prohibits the recovery for injuries suffered while coming and going to work. Opp. at 6. Ms.

Healy cited to McKinley v. District of Columbia, 696 A.2d 1377 (D.C. 1997) to support her

assertion. Based on McKinley, Ms. Healy argues that "if Mr. Williamson was not yet on the job

but was simply driving from his home to his office, he was not doing anything within the scope

of his employment, and the Federal Torts Claim Act is not properly invoked." Opp. at 6.

In McKinley, the District of Columbia Court Appeals noted that, under the Worker's

Compensation Act, "the general rule is that the occurrence of employee injuries sustained off

work premises, while enroute to and from work do not fall within the category of injuries 'in the

course of employment.'" Id. at 1383. McKinley is distinguishable here.

First, this is a Federal Torts Claim Act and not a Worker's Compensation case where an

employee is trying to collect from an employer. Second, the injuries sustained by the plaintiff in

McKinley had nothing to do with his employment. Specifically, plaintiff suffered an "attack of

tachycardia" while driving to work. Id. at 1384. He then filed for Worker's Compensation

based on the injuries caused by the tachycardia attack. McKinley, 696 A.2d at 1380.

In any event, even within the Worker's Compensation context, the District of Columbia

recognizes exceptions to the going to and returning from work rule. See United States v.

Donovan, 221 F.2d 515, 517 (D.C. Cir. 1954). In Donovan, the D.C. Circuit noted that

"[o]rdinarily, injuries sustained by employees when going to or returning from their regular

place of work are not compensable," but there are a number of exceptions to that rule. Id. at 517.

The D.C. Circuit then explained that there are exceptions where the employer provide the

transportation to the employee. Id.  These exceptions include: (1) where the employment

requires the employee to travel on the highways; (2) where the employer contracts to and does

furnish transportation to and from work; (3) where the employee is subject to emergency calls;

and (4) where the employee uses the highway to do something incidental to his employment,

with the knowledge and approval of the employer. Id. at  517 & n.6 (citing Ward v. Cardillo,

135 F.2d 260, 262 (D.C. Cir. 1943)); see also Shreve v. Hot Shoppes, Inc., 184 F. Supp. 436, 439

(D.D.C. 1960) (noting that courts in this jurisdiction repeatedly recognized exceptions to the

going and returning rule "[w]here the employer has agreed to, and does furnish the employee

with transportation, the transportation becomes an incident of the contract of employment, and

any injuries to the employee while traveling are within the course of the employee's

employment.").

        These exceptions squarely apply in this case.  First, it is clear that for S.A. Williamson to

get to his Calverton Office from his residence in Quantico, Virginia, he has to travel on the

highway.  Second, his employer, the FBI, provided him with a government vehicle under its

"Home-to-Work Transportation Plan" for travel to and from work on a daily basis.  (Gov. Exh.

A).  Specifically, his office designated him as one of the employees "expressly authorized" to

use a government vehicle for "home-to-work use."  See Memorandum at 1 (Gov. Exh. B).

Third, the purpose for the FBI's providing S.A. Williamson with a government vehicle for home-

to-work use was to ensure that it has "adequate capacity to respond to emergency and other

investigative demands."  See Section 1-3.1.1 of the MAOPP (Gov. Exh. A).  Furthermore, as a

member on the Counterintelligence squad and Hazardous Materials Response Team, S.A.

Williams was required to "respond immediately" to emergency situations. Finally, S.A.

Williamson's driving to and from work was incidental to his primary responsibilities as a

member on the Counterintelligence squad and Hazardous Materials Response Team.

Under these facts, S.A. Williamson's driving to work on the morning of the accident was

simply part of his job. Accordingly, the Court should find that S.A. Williamson was acting

within the scope of this employment when he drove to work that day.

**III.    Conclusion.**

For the foregoing reasons, the Court should find that S.A. Williamson was acting within

the scope of his employment on the morning of the accident. The Court should also further find

that the United States was properly substituted as the sole defendant in this case and the FTCA is

properly invoked. Accordingly, the Court should dismiss this case for lack of subject matter

jurisdiction because Ms. Healy failed to exhaust administrative remedies as required under the

Federal Torts Claim Act.

Dated: January 30, 2006.                    Respectfully Submitted,

                                                      /s/
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

                                                      /s/
R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

_____/s/_____
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant