UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CLARE HEALY, Individually and as Parent and Next Friend of Her Minor Child, RODNEY HEALY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-1979 (RMC) |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Clare Healy, individually and on behalf of her minor son, Rodney Healy, sues Special Agent ("S.A.") Hugh Stuart Williamson of the Federal Bureau of Investigation ("FBI") for injuries allegedly sustained when, in June 2002, S.A. Williamson's vehicle struck her vehicle in downtown Washington, D.C. Although Ms. Healy notified S.A. Williamson and the FBI that she and her son were represented by counsel in connection with the accident, she failed to respond to the FBI's two requests that she appropriately document her claims for processing pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. Instead, she waited more than two years, and filed this tort action in D.C. Superior Court.

The United States certified that S.A. Williamson was on official duty when the accident occurred, substituted the United States as the sole defendant, and removed to this Court. The United States now moves to dismiss, asserting that the Court lacks subject matter jurisdiction due to Ms. Healy's failure to exhaust administrative remedies. Ms. Healy does not contest her failure

to exhaust; rather, she contends that because S.A. Williamson was not acting within the scope of his employment at the time of the accident, the FTCA does not apply, and it is S.A. Williamson, not the United States, that is the proper defendant.

Thus, the narrow question presented here is whether S.A. Williamson was "acting within the scope of his office or employment" at the time of the accident. Ms. Healy requests jurisdictional discovery on this issue. However, the evidence before the Court on this point being uncontroverted, and Ms. Healy's failure to file proper FTCA claims being undisputed, the Court finds it has no jurisdiction over the action. The United States's motion to dismiss for lack of subject matter jurisdiction will be granted.

## I. FACTUAL BACKGROUND

At about 8:15 a.m. on June 17, 2002, S.A. Williamson was driving a vehicle that struck the rear of a car operated by Ms. Healy.[1] Inside Ms. Healy's car was her son, Rodney Healy. Healy Aff. ¶ 2. At the time of the collision, S.A. Williamson was en route from the FBI Field Office in Washington, D.C. — where he had dropped off a colleague — to his own office in Calverton, Maryland. Williamson Decl. ¶ 4. He was driving an FBI-owned vehicle. *See id.* ¶ 2.

By letter dated August 16, 2002, attorney Jay S. Marks notified S.A. Williamson that he had been retained by Ms. Healy in connection with the accident. That letter said simply: "This office represents Ms. Clare Healy for damages and personal injuries sustained in an automobile accident on June 17, 2002[,] on New York Avenue, N.E., near its intersection with First Street, N.E.,

---

[1] The facts are taken from the Complaint, the Declaration of S.A. Robert W. Chamberlain ("Chamberlain Decl."), the Affidavit of Clare Healy ("Healy Aff."), and the Declaration of S.A. Williamson ("Williamson Decl."). In contrast to the pivotal legal question described above, none of these facts is in dispute.

in Washington, D.C.  Please give this letter to your automobile insurance company and to your employer."  Def.'s Mot. to Dismiss, Exh. A.  Robert W. Chamberlain, Chief Division Counsel, answered Mr. Marks's letter on October 7, 2002.  *Id.*, Exh. B.  That response stated, in part:

> Please be advised that in order to process an administrative claim pursuant to the provisions of the Federal Tort Claims Act (FTCA), we must be in receipt of a properly completed claim. Enclosed for your client, Clare Healy's convenience[,] are two blank Standard Form 95's (SF-95's), Claims for Damage, Injury or Death. . . .
>
> In order for you to present a claim on behalf of Ms. Healy and to comply with the regulations governing the filing of such claims, Title 28, Code of Federal Regulations (C.F.R.), Sections 14.2(a) and 14.3(b), it is necessary that you submit documentation signed by Ms. Healy which evidences your authority to present a claim on her behalf as her agent or representative.

*Id.* at 1.  Mr. Marks wrote to Mr. Chamberlain again on December 17, 2002.  Instead of submitting the claim forms as Mr. Chamberlain had suggested, Mr. Marks stated only: "This office represents Mr. Rodney Healy, a minor child, for damages and personal injuries sustained as a passenger in an automobile accident on June 17, 2002, on New York Avenue, N.E., near its intersection with First Street, N.E., in Washington, D.C.  Mr. Healy is the minor son of Ms. Clare Healy, whose file number is referenced above."  Def.'s Mot. to Dismiss, Exh. C.  Mr. Chamberlain responded by letter dated January 24, 2003, again advising Mr. Marks of the appropriate way to present a claim under the FTCA and forwarding blank SF-95's.  Neither Ms. Healy nor Mr. Marks submitted the necessary paperwork thereafter.  Chamberlain Decl. at 2-3.

Ms. Healy filed suit in D.C. Superior Court on June 16, 2005.  On October 6, 2005, the United States certified that S.A. Williamson was acting within the scope of his employment at the time of the incident, and substituted the United States as the sole defendant, pursuant to the

FTCA. *See* 28 U.S.C. § 2679(d)(1).[2] On the same day, the FBI also removed the action to this Court. The FBI's motion to dismiss, filed on December 14, 2005, has been fully briefed and is now ripe for decision.

## II. LEGAL STANDARDS

The United States moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. Generally, under Rule 12(b)(1), the Plaintiffs bear the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 30-31 (D.D.C. 2001).

## III. DISCUSSION

As the King of Siam would have said to Anna, this case is a puzzlement.[3] Twice advised how properly to file her claims, Ms. Healy failed to comply. Mr. Chamberlain specifically

---

[2] That subsection provides: "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."

[3] The Court gives nostalgic credit to Richard Rodgers and Oscar Hammerstein's "A Puzzlement" in "The King and I."

identified the applicable statute and regulations and provided the appropriate forms, with thorough directions. Instead of following those directions and pursuing her claims against the United States, which has ample money to pay any damages proven, Ms. Healy has insisted on suing S.A. Williamson, who may well not.

Ms. Healy does not dispute that she failed to file the appropriate and necessary forms under the FTCA; this point is deemed conceded. *See Fox v. Am. Airlines, Inc.*, No. 02-2069, 2003 U.S. Dist. LEXIS 13606, at *5 (D.D.C. Aug. 5, 2003) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").[4] Instead, she

---

[4] Had Ms. Healy not conceded this point, the Court would nonetheless find that she had failed to exhaust her administrative remedies. The FTCA authorizes suits for money damages against the United States for injuries caused by any negligent or wrongful act or omission of a government employee acting within the scope of his employment. 28 U.S.C. § 1346(b); *see also Cope v. Scott*, 45 F.3d 445, 447 (D.C. Cir. 1995). However, filing an administrative claim "is a mandatory jurisdictional prerequisite to a suit against the United States" under the FTCA. *Jackson v. United States*, 730 F.2d 808, 809 (D.C. Cir. 1984) (citing 28 U.S.C. § 2675); *see also Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (distinguishing the concepts of jurisdictional and non-jurisdictional exhaustion). Accordingly, a claimant must present "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *Murphy v. United States*, 121 F. Supp. 2d 21, 27 (D.D.C. 2000). This requires "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." *Williams v. United States*, 932 F. Supp. 357, 361 (D.D.C. 1996) (quoting *GAF Corp. v. United States*, 818 F.2d 901, 920 (D.C. Cir. 1987)).

Mr. Marks's letters identified the cause of the Healys' alleged injuries, but did not describe them at all. Even were this enough to allow the FBI to initiate its own investigation, the letters are fatally devoid of anything approximating a "sum-certain damages claim." *Murphy*, 121 F. Supp. 2d at 27. "[A] sum certain is a necessary element of any FTCA administrative claim." *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000). The failure to set forth any damages sought from the FBI warrants dismissal for failure to exhaust administrative remedies. *See Bowden v. United States*, 106 F.3d 433, 441 (D.C. Cir. 1997).

Moreover, Ms. Healy's claims are now barred by the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b), which, as a waiver of sovereign immunity, must be strictly construed. *Kubrick v. United States*, 444 U.S. 111, 117-118 (1979); *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) (noting that "this statute requires a claimant to file an administrative claim within two

argues that S.A. Williamson was not "acting within the scope of his office or employment" at the time of the accident, 28 U.S.C. § 1346(b), and requests jurisdictional discovery on the issue. The Court finds otherwise from the undisputed record facts, and denies the request for jurisdictional discovery.

### A. An Evidentiary Hearing is Unnecessary

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679(d), provides that a federal employee is immune from tort liability when he is "acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* § 2679(d)(1). Pursuant to the Westfall Act, when the Attorney General or his designee believes that a federal employee was acting within the scope of employment, he may issue a certification to that effect. *Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995). "Where, as here, the lawsuit is initially filed in state court, this certification has three consequences: it requires the Attorney General to remove the lawsuit to the local federal court; it requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and it converts the lawsuit into an action against the United States under the Federal Tort Claims Act." *Id.* (citing 28 U.S.C. § 2679(d)(2)). However, this certification is *not* conclusive regarding substitution; rather, the Court may determine independently whether the employee acted within the scope of employment and, therefore, whether substitution of the federal government is proper. *Id.* (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 431-32 (1995), and *Kimbro v. Velten*, 30 F.3d 1501, 1509-10 (D.C. Cir. 1994)). This Court's review of the Attorney

---

years [of accrual] *and* file suit within six months of its denial"); *see also Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980).

Ms. Healy raises no argument in opposition to this governing law.

6

General's scope-of-employment certification is de novo. *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1154 (4th Cir. 1997); *McHugh v. Univ. of Vt.*, 966 F.2d 67, 71-72 (2d Cir. 1992).

Where a plaintiff, like Ms. Healy, challenges the scope-of-employment certification, her "burden [i]s to raise a material dispute regarding the substance of [that] determination by alleging facts that, if true, would establish that the defendant[ was] acting outside the scope of [his] employment." *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). In other words, to obtain discovery and an evidentiary hearing, *id.* at 1215, Ms. Healy is "merely required to plead sufficient facts that, if true, would rebut the certification," *id.* at 1216. But "[n]ot every complaint will warrant further inquiry into the scope-of-employment issue." *Id.* A complaint may be dismissed without a hearing where a plaintiff fails to allege any facts that, if taken as true, would demonstrate that the defendant was acting outside the scope of his employment. *Id.*

Ms. Healy's Complaint contains no allegations relevant to the scope-of-employment issue. Her only allegations directed to this issue are found in a single paragraph of an affidavit submitted in opposition to the United States's Motion to Dismiss. That paragraph states:

> After the accident, we pulled into the parking lot of a nearby McDonald[']s restaurant. During the exchange of information, Mr. Williamson never stated that he was working at the time of the accident. He was dressed and appeared as though he was on his way to his office to start his work day. In addition, the time of the accident, approximately 8:15 a.m., led me to believe that he was on his way to work. At no time did he say he was on duty or that he was doing any work-related activities of any kind.

Healy Aff. ¶ 4. Because the Court accepts these factual assertions as true, and the United States does not, in fact, dispute that S.A. Williamson was "on his way to work" at the time of the accident, there is no need for discovery on this point. *Koch v. United States*, 209 F. Supp. 2d 89, 92 (D.D.C. 2002)

(citing *Gutierrez de Martinez*, 111 F.3d at 1153 (explaining that discovery and an evidentiary hearing are necessary only when there is a "genuine question of fact material to the scope-of-employment issue")). The remaining question, to which the Court now turns, is a purely legal one: Was S.A. Williamson "acting within the scope of his office or employment" at the time of the accident?

### B. S.A. Williamson Was Acting Within the Scope of His Employment

Whether a federal employee is acting within the scope of his employment is, interestingly, a question of state law — here, the District of Columbia. *Stokes*, 327 F.3d at 1214 (citing *Haddon*, 68 F.3d at 1423). D.C. law, in turn, looks to the Restatement (Second) of Agency in defining scope of employment. *Id.* at 1215-26. The Restatement provides:

> Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1). Conduct must be "of the same general nature as that authorized" or "incidental to the conduct authorized" to be within the scope of employment. *Id.* § 229(1). Though agreeing with these legal precepts, Ms. Healy suggests that "[i]f Mr. Williamson . . . was on a personal errand . . . [or] was not yet on the job but was simply driving from his home to his office, he was not doing anything within the scope of his employment, and the [FTCA] is not properly invoked." Pls.' Opp'n at 6.[5]

---

[5] Ms. Healy also draws an analogy to the "coming and going rule" applied under D.C. workers' compensation law, which generally disallows recovery for injuries suffered while an employee is going to and coming from work. Pls.' Opp'n at 5; *see McKinley v. Dist. of Columbia Dep't of Empl. Servs.*, 696 A.2d 1377, 1383 (D.C. 1997) (noting that the "general rule [is] that the occurrence of employee injuries sustained off the work premises, while en route to or from work, do not fall within the category of injuries 'in the course of employment' ").

The undisputed facts demonstrate, however, that although S.A. Williamson "was simply driving from his home to his office" at the time of the accident, he was nonetheless already "on the job." In June 2002, S.A. Williamson was "a member of the [FBI's] Counterintelligence squad and the Hazardous Materials Response Team and frequently had to support other squads in response to terrorism or criminal investigations or to respond to weapons of mass destruction (WMD) threats in the Baltimore Division." Williamson Decl. ¶ 2. To ensure that "each field office [has] an adequate capacity to respond to emergency and other investigative demands," the FBI has implemented a "Home-to-Work Transportation Plan" that authorizes certain personnel, including S.A. Williamson, to use a "government vehicle[] . . . on a routine basis for home-to-work transportation." Def.'s Mot. Exh. A (Manual of Administrative Operations and Procedures ("MAOP") § 1-3.1.1). In other words, the FBI designates certain of its agents to be always at-the-ready in case of emergency, and S.A. Williamson is one such agent. *See* Williamson Decl. ¶ 2; Def.'s Mot. Exh. B (Memorandum on Home-to-Work Transportation Plan, Baltimore Field Office Policy) ("It has been determined that the responsibilities and operational needs of [S.A. Williamson]

---

This argument fails to appreciate that D.C. courts have recognized a number of exceptions to the coming and going rule, including "where the employer has undertaken to provide the transportation." *U.S. Fid. & Guar. Co. v. Donovan*, 221 F.2d 515, 517 (D.C. 1954); *see also id.* at 517 n.6 (noting the following four exceptions: "(1) where the employment requires the employee to travel on the highways; (2) where the employer contracts to and does furnish transportation to and from work; (3) where the employee is subject to emergency calls; [and] (4) where the employee uses the highway to do something incidental to his employment, with the knowledge and approval of the employer"); *see also Shreve v. Hot Shoppes Inc.*, 184 F. Supp. 436, 439 (D.D.C. 1960) (noting exceptions to the rule "[w]here the employer has agreed to, and does furnish the employee with transportation, the transportation becomes an incident of the contract of employment, and any injuries to the employee while traveling are within the course of the employee's employment").

Thus, even were the Court to apply the coming and going rule in this legally and factually dissimilar context, the result would not differ. On these facts — where S.A. Williamson drives an FBI-owned vehicle, on the highways, to and from work, so that he may respond to emergency and other investigative demands — the exceptions to the coming and going rule would plainly apply.

continue to require the home-to-work use of [a government] vehicle."). Accordingly, S.A. Williamson's driving to work in a government vehicle was explicitly authorized, and was incidental to his duty as a member of the Counterintelligence squad and the Hazardous Materials Responses Team "to respond to emergency and other investigative demands." Def.'s Mot. Exh. A (MAOP § 1-3.1.1). The first prong of the Restatement test is thus met. *See* Restatement (Second) of Agency §§ 228(1)(a), 229(1).

The accident also took place "substantially within the authorized time and space limits," *id.* § 228(1)(b), and thus meets the second prong of the Restatement test. It is not disputed that the accident occurred at approximately 8:15 a.m., while S.A. Williamson was driving from his home near Quantico, Virginia, to his office in Calverton, Maryland, after dropping off a colleague at the FBI Field Office in Washington, D.C. Ms. Healy herself explains that "[t]he time of the accident . . . led [her] to believe that [S.A. Williamson] was on his way to work." Healy Aff. ¶ 4. The FBI specifically authorized S.A. Williamson to commute in a government car to increase his capacity to respond to emergencies, and his stop in Washington to drop off a colleague was an incidental act, permitted by FBI policy, that did not require a significant deviation in his route.[6]

---

[6] S.A. Williamson's giving a colleague a ride to the FBI's Washington Field Office was an incidental act authorized by FBI policy. "FBI employees are authorized to accompany the driver of the Bureau automobile to and from the driver's residence and the place of work provided that the trip is justifiable as necessary for the Bureau to retain its emergency response capabilities and no significant deviation from the most direct route occurs." MAOP § 1-3.1(3); *see also id.* § 1-3.1(2) ("An employee may, when circumstances warrant such an action, interrupt his/her travel as long as he/she does not deviate from an expeditious route to his/her residence nor impair his/her ability to retain emergency response capability."). S.A. Williamson explains that he gave his colleague, S.A. Tim Clemente, a ride because S.A. Clemente's car — also an FBI vehicle — was in the shop. Williamson Decl. ¶ 4. He asserts that his stop at the Washington Field Office was not a "significant deviation from an expeditious route to [his] office in Calverton, Maryland," *id.*, and that after that stop he took the "most normal, direct and expeditious route to the Calverton office," *id.* ¶ 5. Ms. Healy does not contend otherwise. Thus, the Court finds that S.A. Williamson's stop at the

Thus, the accident occurred within the time and space limitations authorized.

Finally, S.A. Williamson's driving to work in a government car served the FBI's needs, and was thus "actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228(1)(c). S.A. Williamson is one of those agents specifically designated by the FBI to be able and ready to respond immediately upon need. Williamson Decl. ¶ 2. Past incidents that have required his immediate response include the terrorist attacks of September 11, 2001; a WMD threat at the Southern Avenue Metro in Temple Hill, Maryland; and an anthrax incident at a Department of Justice mail facility. *Id.* The FBI determined that its "operational needs . . . require[d]" S.A. Williamson's use of a government vehicle, Def.'s Mot. Exh. B, and that use effectuated the FBI's purpose: to ensure that the FBI had "adequate capacity" to respond in emergency situations. The third prong of the Restatement test is thus satisfied.[7]

## IV. CONCLUSION

On these facts, S.A. Williamson's driving to work on the morning of the accident was simply part of his job. The Court therefore concludes that the United States correctly certified that he was acting within the scope of his employment at the time of the accident and properly substituted itself as defendant. Although Ms. Healy had ample opportunity to pursue relief against the United States under the FTCA, she failed to file proper claims, despite being instructed and provided the requisite forms, not once but twice. The Court is now powerless to help. Having

---

Washington Field Office was not a significant deviation from the most direct route, did not impair his ability to respond to an emergency situation, and was authorized by and consistent with FBI policy. *See* MAOP § 1-3.1(3); *see also id.* § 1-3.1(2).

[7] Because there is no allegation of intentional force here, it is unnecessary to address the fourth prong of the Restatement test. *See* Restatement (Second) of Agency § 228(1)(d).

11

knowingly failed to exhaust their administrative remedies, neither Ms. Healy nor Master Healy can now be heard to complain.

The Court is without jurisdiction to entertain this suit and it will be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. A memorializing order accompanies this memorandum opinion.


Date: June 14, 2006                                           /s/
                                             ROSEMARY M. COLLYER
                                             United States District Judge